Filed 12/16/25  P. v. Gonzalez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064546 |
| v. | (Super. Ct. No. FWV1100266) |
| LEONARDO GONZALEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Ingrid Adamson Uhler, Judge. Reversed and remanded with instructions.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

Leonardo Gonzalez appeals from an order entered after a resentencing hearing under Penal Code section 1172.75.[1] Section 1172.75 retroactively invalidated prison prior enhancements under former section 667.5, subdivision (b), and required trial courts to conduct a full resentencing of defendants whose prison terms included such an enhancement.

Gonzalez was originally sentenced in 2012 to 117 years in prison for various crimes and enhancements, including firearm enhancements, a gang enhancement, and a prison prior enhancement. Gonzalez was resentenced in 2024. The trial court struck the prison prior as well as the gang enhancement. The court, however, declined to strike the firearm enhancements, finding Gonzalez posed a risk to public safety.

On appeal from his resentencing hearing, Gonzalez's appointed counsel filed a brief asserting there were no arguable issues to pursue and asking the court to follow the procedure outlined in *People v. Delgadillo* (2022) 14 Cal.5th 216, 231–232 (*Delgadillo*). We advised appellant of his right to file a supplemental letter or brief, which he did, and pursuant to the discretion granted in *Delgadillo*, we undertook an independent review of the record.

After our review, we asked the parties to brief the following issue: "Did the trial court abuse its discretion under Penal Code section 1385 in declining to strike or dismiss firearm enhancements alleged in connection with counts one through four of the first amended information, or in declining to strike the punishments therefrom? (See Pen. Code, §§ 1172.75, subd. (d)(1), 1385, subds. (b)(1), (c)(2), & (c)(2)(B), and 12022.53, subd. (g); *People v.*

---

[1] All further undesignated statutory references are to the Penal Code.

*Gonzalez* (2024) 103 Ca1.App.5th 215; *People v. Williams* (2018) 19 Cal.App.5th 1057, 1062–1063.)"

The parties filed briefs responding to our question, and both sides agreed the trial court abused its discretion by focusing exclusively on the danger Gonzalez posed at the time of his resentencing, rather than also considering the danger he might pose to society upon his eventual release if the court were to dismiss the firearm enhancements. Because the trial court applied the wrong legal standard to determine the public safety risk Gonzalez might pose, we reverse its ruling and remand for resentencing in accordance with this opinion.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In December 2011, a jury found Gonzalez guilty of attempted murder (counts 1 through 3), shooting at an inhabited dwelling (count 4), kidnapping (count 5), imprisonment by violence (count 6), corporal injury to spouse (count 7), and being a felon in possession of a firearm (count 8). On each of the three attempted murder counts, the jury also found true the special allegation that Gonzalez personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and committed the offense for the benefit of and at the direction of a criminal street gang. (§ 186.22, subd. (b)(1)(C).) The court also found true allegations that Gonzalez had suffered two prior convictions for purposes of section 667.5, subdivision (b).

The trial court sentenced Gonzalez to an indeterminate term of 15 years to life in prison on each of the three attempted murder counts (counts 1 through 3). In addition, the court sentenced him to another 20 years on each attempted murder count for personal and intentional discharge of a firearm (§ 12022.53, subd. (c)). The court imposed, but stayed, another 10 years on each attempted murder count for personal use of a firearm (§12022.53, subd. (b)) and imposed, but also stayed, an additional 10-year sentence for the criminal street gang allegation. (§ 186.22, subd (b)(1)(C).) The court also imposed a determinate term totaling 12 years on the other charges, which included a one-year prison prior enhancement under section 667.5, subdivision (b).[2] In total, Gonzalez, who was 29 years old at the time, was sentenced to 117 years to life. This court affirmed Gonzalez's conviction on appeal. (See *People v. Gonzalez* (Aug. 7, 2014, G049832) [nonpub. opn.].)

In 2024, a resentencing stipulation form was filed under section 1172.75, and the court set a resentencing hearing. At the hearing, the court considered the full panoply of punishments imposed on Gonzalez. The court made significant modifications to the sentence. It (1) struck the gang enhancements from counts 1, 2, 3, and 8, (2) struck the one-year prison prior as required under section 1172.75, and (3) reduced the sentences on each of the attempted murder counts from 15 years to 7 years. It did not, however, reduce the 20-year firearm enhancements on each of the attempted murder counts. Thus, Gonzalez was resentenced to 21 years to life plus 70 years in prison.

---

[2] The court struck the first prior conviction for purposes of sentencing.

In declining to strike the firearm enhancements, the trial court gave the following explanation: "And in regards to my review of the presentence investigation report, I'm going to indicate that the Court is convinced by clear and convincing evidence that the defendant posed a public safety risk, and I am not going to use my discretion to either strike or lower any of the gun enhancements that were imposed and found true by the jurors. [¶] I'll indicate that he shot into an inhabited dwelling based on—it appears that it was retaliatory based on the previous domestic violence between himself and his girlfriend, and this was his former girlfriend's home that was shot at. There were children as well as adults within the home. [¶] In regards to the presentence investigation report, it does indicate that the defendant was identified as a gang member with reported ties to the Mexican Mafia. He had a history of criminal threats, false imprisonment, and possession of a controlled substance while armed. Those were his criminal convictions prior to the incident before the Court. [¶] He had the means and revengeful intent to cause lethal harm to the victims. Based on his conduct, it will be indicated that the present matter showed callousness and criminal sophistication, making him a serious and immediate risk to the community and the victims. [¶] So based on the charged offenses, based on his previous convictions and his background and association with the Mexican Mafia, I do believe that he poses a public safety [*sic*], and I am going to—by clear and convincing evidence, I'm convinced that he does pose a public safety [*sic*], and I'm not going to use any additional discretion to lower or strike any additional enhancements under the 12022.53."

This appeal focuses only on the trial court's refusal to dismiss or strike the 20-year firearm enhancements on each of the three attempted murder counts.

DISCUSSION

I.

STANDARD OF REVIEW

"In reviewing the trial court's determination that dismissal of Gonzalez's firearm enhancement would endanger public safety, we apply an abuse of discretion standard of review." (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)[3] A trial court abuses its discretion when it bases its decision on "'an incorrect legal standard.'" (*Ibid*.)

II.

APPLICABLE LAW

"Section 1172.75, subdivision (a), provides, 'Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid.' The Department of Corrections and Rehabilitation is required to identify for the sentencing courts all persons 'currently serving a term for a judgment that includes an enhancement described in subdivision (a)' (§ 1172.75, subd. (b)), and if a sentencing court verifies a defendant was sentenced under an invalid enhancement, the court 'shall recall the sentence and resentence the defendant' (§ 1172.75, subd. (c))." (*People v. Garcia* (2024) 101 Cal.App.5th 848, 855.) This was what prompted the trial court to resentence Gonzalez.

"'By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.' [Citations.] [¶] Section 1172.75, subdivision (d)(1), states that the

---

[3] The appellant in this matter shares the same name as the appellant in *Gonzalez*; we are aware of no familial relationship between the two.

6

resentencing 'shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety,' and further, resentencing 'shall not result in a longer sentence than the one originally imposed.' In addition, the sentencing court 'shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.' (§ 1172.75, subd. (d)(2).) 'The court may consider postconviction factors, including but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.'" (*People v. Garcia*, *supra*, 101 Cal.App.5th at pp. 855–856, fn. omitted.)

Here, the trial court conducted the required full resentencing and, in addition to striking the now-invalid one year prison prior, it made significant modifications in other aspects of the sentence. The court, however, declined to strike or reduce Gonzalez's three firearm enhancements based on what it found was clear and convincing evidence that Gonzalez posed or poses a danger to public safety. The question before us is whether the court considered the proper factors in making that determination. We conclude it did not.

## III.

### THE TRIAL COURT ABUSED ITS DISCRETION BY DECLINING TO STRIKE THE FIREARM ENHANCEMENTS BASED SOLELY ON GONZALEZ'S PAST OR CURRENT DANGEROUSNESS

In between Gonzalez's original sentencing and his section 1172.75 hearing, the Legislature made changes to section 1385 to give sentencing courts greater discretion in imposing enhancements. "Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 to include subdivision (c). (Stats. 2021, ch. 721.) Section 1385(c)(1) provides that '[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.' (§ 1385(c)(1); see Stats. 2021, ch. 721.) Section 1385(c)(2) provides as follows: 'In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. "Endanger public safety" means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.'" (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.)

Among the mitigating circumstances is section 1385, subdivision (c)(2)(B): "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (*Ibid.*) In Gonzalez's case, the District Attorney alleged numerous firearm enhancements under section 12022.53, subdivisions (b) and (c), in addition to

the gang enhancements and prison priors. Therefore, on resentencing, the trial court was required to consider and afford great weight to the presence of multiple enhancements in exercising its discretion whether to strike them.

The California Supreme Court recently clarified how the trial court is to conduct this analysis: "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1036.)

Although the trial court here did not explicitly state it was exercising its discretion pursuant to section 1385, it did acknowledge it had "additional discretion to lower or strike any additional enhancements." And it indicated it would not exercise its discretion to reduce or strike firearm enhancements because it concluded Gonzalez posed a risk to public safety. It appears the court was attempting to perform the analysis required by section 1385, subdivision (c).

In doing so, however, the trial court misconstrued the statute's definition of "endanger[ing] public safety." The court can decline to dismiss an enhancement based on public safety if "there is a likelihood *that the dismissal of the enhancement would result* in physical injury or other serious danger to others." (§ 1385, subd. (c)(2), italics added.) As *Gonzalez* recently held, current dangerousness is "an appropriate factor [for the court] to

9

consider" in this analysis. (*Gonzalez, supra,* 103 Cal.App.5th at p. 228.) But it is not the only factor. Instead, as *Gonzalez* explained, "a crucial part of the inquiry is how the *dismissal of the enhancement* will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly. [Citation.] Further, an inquiry into whether public safety will be endangered by the dismissal of an enhancement for a defendant serving a lengthy indeterminate sentence should also take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings (and for murder convictions, by the Governor), who will have the opportunity to assess the defendant's dangerousness at that time." (*Ibid.*, italics added.)

It appears the trial court did not take these factors into account. Instead, the court made its conclusions based on the presentence investigation report, the charged offenses, Gonzalez's prior convictions, and his "background and association with the Mexican Mafia." There was no analysis of Gonzalez's postconviction record, or anything post-dating the conviction itself. The court did not evaluate how old Gonzalez would be when he would become eligible for parole under the significantly revised sentence the court was imposing and whether, at that point in his life, he would still pose a danger to public safety.

Gonzalez's indeterminate sentence as the result of his resentencing is 21 years to life, and his determinate sentence is 70 years, for a total of 91 years to life. At the time of his original sentencing, Gonzalez was 29 years old, but by the time he was resentenced in 2024, he was 41 years old. The firearm enhancements comprise 60 years of his determinate

10

sentence. If the enhancements were to be stricken, Gonzalez would become eligible for parole at around the age of 59. To assess public safety risk for purposes of section 1385, the court must analyze whether there is a likelihood Gonzalez will still pose a danger at the time of his potential release under the revised sentence, if the 60 years of firearms enhancements were removed. On remand, the trial court should conduct this analysis in exercising its discretion under both sections 1172.75 and 1385, as well as addressing any other issues it deems appropriate regarding the sentence.[4]

## DISPOSITION

The resentencing order is reversed and the matter remanded for a new resentencing hearing consistent with this opinion.


GOODING, J.

WE CONCUR:


DELANEY, ACTING P. J.


SCOTT, J.

---

[4] In the respondent's brief, the Attorney General pointed out two other potential defects in the sentence, including an allegedly invalid stay of the firearm enhancements under section 12022.53, subdivisions (b) and (c); and the dismissal of only one type of gang enhancement rather than all gang enhancements. These potential errors were not brought to the trial court's attention and were not briefed here by appellant, so we do not address them here. They should be addressed on remand.

11