Filed 1/30/26  P. v. Cates CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084201 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD123918) |
| EDWARD DEAN CATES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David J. Danielsen, Judge.* Affirmed.

Tracy R. LeSage, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*      Retired judge of the San Diego Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

After a jury found Edward Cates guilty of various sexual, violent, and threat-related offenses, the court sentenced him to an indeterminate term of 25 years to life and a determinate term of 28 years and eight months, to run consecutively.  As part of the sentence, the court imposed a five-year prior enhancement and a one-year prison prior.  It stayed a second five-year prior enhancement and a one-year prison prior.

Many years later, after the Legislature enacted Penal Code[1] section 1172.75 in 2022, the Department of Corrections and Rehabilitation (CDCR) identified Cates as potentially eligible for resentencing and he petitioned the court to recall his sentence.  (See Stats. 2022, ch. 58, § 12.)  At the resentencing hearing, the court struck the one-year prison prior that had been stayed and reduced fines to the mandatory minimums, but it otherwise made no changes to the original sentence.

Cates contends that in declining to further reduce his sentence, the trial court failed to consider his dangerousness at the time of his eventual release and instead focused only on his current risk to public safety.  He also argues that as part of its resentencing analysis, the court should have considered he will not be released until the parole board determines he is not a danger to public safety.

We conclude Cates has not met his burden to establish error on appeal.  Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, a jury convicted Cates of the following: continuous sexual abuse of a child by means of force, violence, duress, menace, and threat of bodily harm within the meaning of section 1203.066, subdivision (a)(1) with

---

[1]    All further statutory references are to the Penal Code.

2

a prior violent felony conviction (§§ 288.5, subd (a) & 667.71, subd. (a); count 1); making a terrorist threat (§ 422; count 4); corporal injury to spouse with the personal use of a deadly and dangerous weapon within the meaning of section 12022, subdivision (b)(1) (§ 273.5, former subd. (a); count 5); felony child abuse (§ 273a, subd. (a); count 6); threatening a witness (§ 140; count 7); dissuading a witness from testifying (§ 136, subd. (a)(1); count 8); forcible rape (§ 261, subdivision (a)(2); count 9); and lewd acts upon a child (§ 288, former subd. (a); counts 10 through 19). The trial court found that Cates had two one-year prison priors (§ 667.5, former subd. (b)); one serious felony prior (§§ 667, subd. (a)(1)); and a five-year prison prior (§ 667.6).

The court sentenced Cates to 25 years to life in prison for counts 1 and 10 plus a determinate term of 28 years and eight months for the remaining counts, to run consecutively. As part of the determinate sentence, it imposed a five-year serious felony prior (§ 667, subd. (a)(1)) and a one-year prison prior (§ 667.5, subd. (b)). The court also stayed a five-year prison prior (§ 667.6) and a one-year prison prior (§ 667.5, subd. (b)).[2] For count 9, forcible rape, the court imposed the upper term.

In response to subsequent legislative changes that made Cates eligible for resentencing, the CDCR identified him as a person currently serving a prison term that included an enhancement imposed pursuant to section 667.5, subdivision (b).

In May 2024, Cates petitioned the court to recall his sentence and dismiss various enhancements, citing sections 1172.75, 667, and 1385, subdivision (c), Senate Bill Nos. 483, 1393, 81 (all enacted in 2021–2022 Reg. Sess.), and the California Rules of Court. Specifically, he asked the court to

---

[2] Of the two one-year prison priors, the imposed prior was for rape; the stayed prior was for burglary.

invalidate the one-year prison prior (§ 667.5, subd. (b)) and the five-year serious felony prior (§ 667, subd. (a)(1)).[3] He also asked the court to strike his strike prior and impose the lower term on count 9.

Cates's defense counsel argued the mitigating factors that could be considered under section 1172.75 and mentioned that Cates would only be released if the parole board permitted it. The defense agreed the court could not modify the indeterminate sentence.

The trial court conducted a thorough analysis of the postconviction factors outlined in section 1172.75, subdivision (d)(3). It considered a variety of circumstances including Cates's history of trauma, conduct in custody, rehabilitative efforts, and criminality. It specifically noted Cates's "change of heart," "newfound sobriety," his founding of inmate support groups, and participating in activities. It also looked to Cates's disciplinary record and record of rehabilitation as well as whether his advanced age, time served, and his diminished physical condition reduced his risk for future violence. It confirmed Cates's current age and his age at the time of the original offense.

The court characterized Cates's criminal history as including "abhorrent crimes." It also noted that his conduct in custody was such that he lost 453 days of custody credits, albeit 91 were restored. This conduct involved violence, threats of violence, sexual harassment of another inmate and led to conviction for a serious felony and imposition of a four year consecutive prison sentence. He was also placed in administrative segregation for 510 days and in solitary confinement for 75 days.

---

3    The record is unclear as to which of the two prison priors (§ 667.5, subd. (b)) Cates was asking to dismiss, but only one was eligible because the other was a sex offense. (See § 1172.75, subd. (a).)

The court was mindful that resentencing and imposing a lesser sentence was the goal unless it was convinced by clear and convincing evidence that a lesser sentence would endanger public safety. So the bottom line was: "Does continued incarceration at the level originally pronounced serve the interest of justice or is it no longer in the interest of justice?"

The court found that Cates was not eligible to have his first prison prior stricken due to the nature of the offense (rape). But it struck the second prison prior (burglary) that had been stayed and reduced the fines to the mandatory minimum. Otherwise, it declined to make any further sentencing reductions: "[O]n balance, given the level of criminality in these cases, coupled with the seriousness and viciousness of the prior, given his misbehavior—dangerous misbehavior in custody, and given his most recent consecutive sentence conduct, I think the conclusion from the Court, despite his good efforts lately is that imposing a lesser sentence would endanger public safety."

## DISCUSSION

Cates contends that the trial court abused its discretion and violated his due process rights by misapplying section 1172.75. He posits that the court should have reduced his sentence further by considering his dangerousness at the time of his earliest possible release and the role of the parole board as a safeguard against premature release.

We generally review sentencing decisions—including resentencing—for abuse of discretion. (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856.) We determine whether substantial evidence supports the trial court's findings of fact, whether the court ruled on the law correctly, and whether the court applied the facts to the law in a way that is arbitrary or capricious. (*Id*. at 857.) "[A]n abuse of discretion arises if the trial court based its

decision impermissible factors [citation] or on an incorrect legal standard."
(*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

To determine whether the court was aware of its discretion and its obligations, we first look at what section 1172.75 requires. Subdivision (a) of section 1172.75 invalidates any sentence enhancement that was imposed pursuant to section 667.5, subdivision (b), except for certain sexually violent offenses. Where an invalid enhancement was imposed, the defendant is entitled to be resentenced. (§ 1172.75, subd. (c).) In doing so, the court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3).)

Cates's trial counsel requested sentencing reduction via sections 1172.75 and 1385, subdivision (c)(1). On appeal, he argues that the holding of *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228 (*Gonzalez*), which construes section 1385, should extend to section 1172.75 cases.

In *Gonzalez*, this court concluded it was error for the trial court to consider only current dangerousness when deciding whether to reduce a previously imposed sentence. (*Gonzalez, supra*, 103 Cal.App.5th at p. 230.) When the defendant is serving a lengthy indeterminate term, the court should take into account that any release would be contingent on review by the parole board. (*Id.* at pp. 228, 230–231.) The parole board's future review of the defendant's then-dangerousness would act as a "safety valve" against releasing an inmate who may endanger the public. (*Id.* at p. 228.) A baseline

6

for the court's determination of future dangerousness is calculating the defendant's release date if all eligible enhancements were dismissed. (*Id.* at pp. 230–231.) At the same time, we cautioned that the trial court "is [not] permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings." (*Id.* at p. 228, fn. 10.)

*Gonzalez* expanded upon *People v. Williams* (2018) 19 Cal.App.5th 1057 (*Williams*), which established that determining whether a resentenced defendant poses an unreasonable risk to public safety is "necessarily a forward-looking inquiry." (*Id.* at p. 1063.) It concluded that the trial court abused its discretion when it did not to consider when, if ever, the defendant would be released were the reduction be granted. (*Id.* at p. 1064.) The court noted that if the trial court had reduced the defendant's sentence, the dangerousness determination would simply be deferred until the defendant was elderly and be vested in the parole board. (*Id.* at pp. 1063–1064.)

Taken together, *Gonzalez*, *supra*, 103 Cal.App.5th at page 230 and *Williams*, *supra*, 19 Cal.App.5th at page 1063 could be read to establish a general principle that the trial court must look at the future circumstances of how and when a defendant would be eligible for release. But we need not decide this question because, even assuming this is correct, here there is no showing that the trial court did *not* properly consider this factor among many others in reaching its ultimate conclusion that further reduction of Cates's sentence would endanger public safety.

We note at the outset that Cates's counsel did not cite *Williams* at the resentencing hearing.[4] Although she mentioned that his indeterminate

---

[4]   *Williams* was decided four years before Cates's resentencing and interpreted section 1170.126. (*Williams*, *supra*, 19 Cal.App.5th at p. 1060.) Our opinion in *Gonzalez* was filed in June 2024, one month after the

prison term was unaffected by the resentencing so that "Mr. Cates will still only be able to be paroled by the parole board," she did not specifically argue how that should result in further reduction of his determinate term. Instead, she focused on Cates's past trauma and voluntary participation in rehabilitative programs.

Cates fails to establish that the trial court abused its discretion by misapplying the applicable legal standard. In challenging a sentencing decision, the defendant has the burden of demonstrating that the trial court misunderstood the nature or scope of its sentencing discretion. (*People v. Reyes* (2016) 246 Cal.App.4th 62, 82.) In general, we presume the court knew of and followed the applicable law. (*Ibid.*) We assume it considered all relevant sentencing factors unless the record "affirmatively demonstrates otherwise." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765 (*Knowles*).) The appellant cannot simply rely on a silent record to prove abuse of discretion. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 725 (*Coleman*); *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["[W]e cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion"].) Here, there is nothing to indicate that the trial judge limited his focus to Cates's dangerousness if he were released today.

Cates relies on *People v. Panozo* (2021) 59 Cal.App.5th 825, a case in which we concluded that remand was required because the record was ambiguous as to whether the trial court understood its task. (*Id.* at p. 840.) He argues that the record here is similarly ambiguous. But *Panozo* involves a somewhat unusual situation in which the applicable statute required the

---

resentencing hearing in this case. It expanded upon *Williams*'s analysis and applied it to section 1385. (*Gonzalez, supra,* 103 Cal.App.5th at p. 228.)

8

court to treat the defendant's military service-related posttraumatic stress disorder (PTSD) as a mitigating factor in sentencing. (*Id.* at pp. 828, 834.) Despite this mandate, the trial court denied probation and imposed the middle term of imprisonment. And although it discussed various other aggravating and mitigating factors highlighted in the probation report, the court entirely failed to mention the defendant's PTSD. (*Id.* at p. 831.) Under these circumstances, we characterized the record as not merely "silent" on the question of whether the court considered the defendant's PTSD, but rather "ambiguous" in strongly suggesting it did not. (*Id.* at p. 839 ["There is no evidence the trial court was aware of its statutory obligation to consider service-related mitigating factors at sentencing— rather, all indications are to the contrary"].)

Here, in contrast, there is no statutory mandate as to how the court should assess the defendant's danger to public safety. (See *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991.) Moreover, there are no "indications" the trial court focused only on Cates's current dangerousness. Counsel pointed to the role of the parole board in deciding whether and when Cates would ultimately be released. And the judge affirmatively considered factors such as whether Cates's advanced age and diminished physical condition have reduced his risk for future violence. Although a more specific argument might have elicited more specific comments from the court about how it analyzed Cates's future dangerousness in light of his indeterminate sentence, the record is at best "silent" on the issue. (*Knowles, supra,* 105 Cal.App.5th at p. 765; *Coleman, supra,* 98 Cal.App.5th at p. 725.) Under these circumstances, Cates has failed to satisfy his burden of establishing an abuse of discretion.

9

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

DO, J.