Filed 4/21/26  P. v. Barton CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TRACY WILLIAM BARTON,<br><br>    Defendant and Appellant. | G065249<br><br>(Super. Ct. No. 08WF1575)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Larry Yellin, Judge. Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General,

Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Appellant.

*　　　*　　　*

Tracy William Barton challenges the trial court's order resentencing him pursuant to Penal Code section 1172.75.[1] We conclude the court did not abuse its discretion in resentencing Barton to a sentence five years shorter than the original. Nor did it abuse its discretion in declining to further reduce the sentence; Barton is a career criminal with a history of reoffending who committed a serious, violent crime. We therefore affirm the sentence.

FACTUAL AND PROCEDURAL HISTORY

According to Barton's recitation of facts in his motion for resentencing, on the evening of February 12, 2008, he knocked on the front door of a home. The woman who answered the door (the victim) was in her 60's, and she recognized Barton as someone who washed her neighbor's car. When Barton expressed concern about her neighbor, the victim unlocked the deadbolt and opened her door. Barton then pushed his way into her house and grabbed her. He pushed her into the bathroom, hit her in the face, and eventually pushed her into the bedroom. He tied her up using pantyhose he found in her drawer and gagged her. He demanded money and told her the neighbor told him to do this. He pulled her pants down and continued to hit her. Her screams notified neighbors of the attack, and someone called the police. When officers arrived, Barton tried to escape but he was caught and detained.

---

[1] Further statutory references are to the Penal Code, unless otherwise noted.

2

On April 1, 2010, a jury convicted Barton of assault with intent to commit rape (§ 220, subd. (b), count 1); first degree burglary (§§ 459, 460, subd. (a), count 2); assault with force likely to produce great bodily injury (former § 245, subd. (a)(1), count 3); and sexual battery by restraint (§ 243.4, subd. (a), count 4). As to counts 1 through 3, the jury found Barton inflicted great bodily injury within the meaning of section 12022.7, subdivision (a).

On April 30, 2010, the trial court sentenced Barton to 40 years to life calculated as follows: 25 years to life plus a two-year enhancement under section 667.9, subdivision (b), (victim over the age of 65) and a three-year enhancement under section 12022.7, subdivision (a), (great bodily injury), for a total of 30 years to life on count 2. Barton also received a sentence of five years for an enhancement based on a prior felony conviction under section 667, subdivision (a)(1), and five one-year sentences for prior prison terms under section 667.5, subdivision (b). The court imposed and stayed a sentence of 25 years to life for count 1. It imposed sentences of 25 years to life each for counts 3 and 4, with a three-year enhancement under section 12022.7, subdivision (a), on count 3; these sentences were ordered to run concurrently with the sentence on count 2.

On August 10, 2023, Barton filed a petition for recall and resentencing under section 1172.75. The trial court held a resentencing hearing on February 24, 2025. After reviewing all briefs and exhibits filed by the parties, hearing a statement from Barton, and oral argument from counsel, the court resentenced Barton, striking the five prior prison term enhancements under section 667.5, subdivision (b), thereby reducing his sentence to 35 years to life.

The trial court commended Barton's rehabilitative effort and self-improvement efforts. However, the court also noted Barton's decades-long

3

criminal career and the long-lasting impact of his attack on the victim, as demonstrated by a new victim impact statement offered by the Attorney General. The court noted Barton was in his 50's when he attacked the victim: "This is not the indiscretions of a young man." The court further noted that though Barton seemed to have taken positive steps toward rehabilitation during this incarceration, his prior prison terms (for sexual assault and rape) were not so self-reflective, and he quickly reoffended each time he was released. The court believed Barton to be sincere but did not feel certain he would not reoffend if he were to be released. Barton filed a timely notice of appeal.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"We review a trial court's sentencing decisions for an abuse of discretion, evaluating whether the court exercised its discretion 'in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest."'" (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.)

"An abuse of discretion is found where the court 'relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.'" (*People v. Panozo, supra,* 59 Cal.App.5th at p. 837.) "'[A]n abuse of discretion [also] arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.'" (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).) "[G]etting the legal standard wrong means that a subsequent decision

4

becomes *itself* a per se abuse of discretion." (*Conservatorship of Bower* (2016) 247 Cal.App.4th 495, 506.)

## II.

## BARTON DID NOT FORFEIT HIS CLAIMS

The Attorney General argues that the basis of Barton's appeal was not argued or stated before the trial court and it is therefore waived on appeal. Specifically, Barton did not object or point out to the trial court that it "failed to consider that his ultimate release would be contingent upon parole review." We disagree.

"""""The purpose of the general doctrine of waiver is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ."""" (*People v. Simon* (2001) 25 Cal.4th 1082, 1103.) As long as an objection "fairly apprises the trial court of the issue it is being called upon to decide," the argument is not waived on appeal. (*People v. Scott* (1978) 21 Cal.3d 284, 290.)

The basis of Barton's appeal is broader than that articulated by the Attorney General. Barton argues on appeal that the trial court misunderstood the standard of dangerousness and therefore misapplied the standard in two ways: (1) the court did not use a "forward-looking inquiry" when evaluating Barton's danger to society as set forth in *Gonzalez, supra,* 103 Cal.App.5th at p. 229; and (2) the court failed to consider that the Board of Parole Hearings is a safeguard that will further protect against release of a dangerous individual.

These arguments, and the case law on which Barton relies, were adequately raised before the trial court. Specifically, Barton requested a reduction to a seven-years-to-life sentence, with the understanding he is currently 71 years old, and in poor health. He also currently has mobility

5

issues and uses a walker. Barton argued by the time he would be up for parole, he would be older and not likely any healthier. Moreover, his release would be contingent upon the discretion of the Board of Parole Hearings. In making these arguments at the hearing, Barton's counsel specifically cited the *Gonzalez* case, the same case on which Barton relies on appeal.

At the hearing, the trial court acknowledged and addressed Barton's arguments and the law on which they were based. Barton's age was a factor the court considered, but the court still felt it was likely Barton could reoffend, because he had reoffended every time he had been released from prison in the past, including the instant crime which was committed when he was in his 50's. Although the trial court acknowledged Barton would be subject to a parole hearing, it concluded Barton could still reoffend regardless of when he was released.

Barton did not forfeit his arguments on appeal.

## II.

### THE TRIAL COURT DID NOT VIOLATE BARTON'S DUE PROCESS RIGHTS IN RESENTENCING HIM UNDER SECTION 1172.75

Barton applied for resentencing under section 1172.75, subdivision (a), arguing the sentencing enhancements for prior convictions were invalid. Section 1172.75 entitles defendants to full reconsideration of their sentences if their current judgment includes prior prison term enhancements imposed under section 667.5. (§ 1172.75, subds. (a)–(c); *People v. Rhodius* (2025) 17 Cal.5th 1050, 1054–1055.) Enhancements under section 667.5, subdivision (b), are "legally invalid." (§1172.75, subd. (a).)

Section 1172.75 requires a full resentencing hearing. (See *People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) In resentencing a defendant, the trial court must use current sentencing guidelines and apply all changes in

6

the sentencing laws since the initial sentence was imposed. (§ 1172.75, subd. (d)(2).) The court is not obligated to reduce the defendant's sentence beyond vacating the invalid enhancements, but it may do so under section 1172.75 subdivision (d)(3), if there are postconviction factors showing continued incarceration is no longer "in the interest of justice." (§ 1172.75, subd. (d)(3).) This determination is separate and apart from any analysis under subdivision (d)(1), which permits a court to resentence a defendant without any reduction in time if it "finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1); *People v. Garcia* (2024) 101 Cal.App.5th 848, 855–856 [trial court's public safety analysis to refuse any reduction in sentence was upheld].)

The trial court's resentencing order reduced Barton's sentence to 35 years to life, which is a lesser sentence than the previously imposed sentence of 40 years to life. Accordingly, there was no need for a public safety analysis under section 1172.75, subdivision (d)(1), to justify the refusal to further reduce the sentence. Barton concedes the court was not required to consider Barton's dangerousness because his sentence was reduced. The court did, however, base its new sentence on its determination Barton could likely reoffend. Barton argues this is the same as a determination Barton currently poses a danger to public safety. He further argues the court misunderstood and incorrectly applied the standard of dangerousness, in coming to this conclusion. Barton asserts the court thereby violated his due process rights.

To establish he is not a danger to public safety, Barton offered evidence of programs he completed in prison, a change in his mindset, and work he has done to rehabilitate himself during his incarceration. The exhibits to his motion included an "accountability packet" in which Barton

took accountability for his past actions, a letter of remorse addressed to the victim, a statement of how he intends to prevent relapse, and his plans should he be paroled. Additionally, Barton argued he is advanced in age (71 years old), has been diagnosed with bone and prostate cancer, and has mobility issues necessitating use of a walker. Barton implies he is no longer in a physical or mental condition to reoffend.

The trial court did not make an express finding about the danger Barton might pose to public safety. It did not mention danger at all and did not refer to any particular code section or subdivision. The trial court's analysis is more in line with the postconviction factors listed in section 1172.75, subdivision (d)(3), rather than an analysis of Barton's dangerousness. Under subdivision (d)(3), when resentencing, the court may consider Barton's record and rehabilitation during incarceration, the impact of his age and health on the risk for future violence, and whether circumstances have changed in such a way "that continued incarceration is no longer in the interest of justice." In considering Barton's evidence, the court stated it believed Barton to be sincere in his change of heart and intentions but declined to further reduce the sentence. The trial court did not abuse its discretion in doing so.

Barton argues the trial court incorrectly concluded Barton is currently a danger to public safety because it did not understand the standard for dangerousness which is a future-based inquiry rather than a present evaluation. Barton further argues the trial court failed to consider the fact that because his sentence is indeterminate, Barton cannot be released without review and approval by the Board of Parole Hearings, which will also consider his dangerousness at that time.

8

Barton's arguments rely heavily on the *Gonzalez* case, in which a trial court specifically determined the defendant to be a danger to public safety at the time of resentencing, believing that to be the standard for a dangerousness analysis under section 1385, subdivision (c)(2). (*Gonzalez, supra*, 103 Cal.App.5th at p. 227.) The *Gonzalez* court found "[t]he plain words of the statute do not support the trial court's singular focus on whether the defendant *currently* poses a danger." (*Id.* at p. 228, italics in original.) The current dangerousness of the defendant matters only if reduction of the sentence would result in release "within a short time frame." (*Ibid.*) If the reduced sentence were to result in continued incarceration, then the relevant consideration is whether the defendant is likely to still be dangerous in the future. (*Ibid.*) The *Gonzalez* court took instruction from the case of *People v. Williams* (2018) 19 Cal.App.5th 1057, which dealt with the dangerousness inquiry under yet another statute–section 1170.126. (*Gonzalez,* at p. 229.) The *Williams* court held the inquiry must be "forward-looking," in that the court should evaluate the defendant's dangerousness at the time of his release, not at the time of his resentencing. (*Williams, supra,* 19 Cal.App.5th at p. 1063.) The court's dangerousness analysis must include consideration of when, if ever, the defendant would be released if he were resentenced. (*Ibid.*)

The *Gonzalez* court also found the resentencing court should take into account whether a defendant's release will be contingent on review by the Board of Parole Hearings which will have the ability to reassess the defendant's danger at the time he is being considered for release. (*Gonzalez, supra*, 103 Cal.App.5th at p. 228.) However, that future review is not meant to be a delegation of the trial court's judgment, but more like a "safety valve" to further protect the public. (*Id.* at p. 228, fn. 10.)

9

The *Gonzalez* court found the trial court applied an erroneous legal standard when it only considered the defendant's dangerousness at the time of resentencing and did not consider when he might be released if the relevant enhancement was dropped and whether he would likely be dangerous at that time. (*Gonzalez, supra*, 103 Cal.App.5th at pp. 230–231.) Barton urges us to make the same finding. We decline to do so.

Neither *Gonzalez* nor *Williams* are directly applicable, since they each deal with interpretation of a statute other than section 1172.75. To the extent that these cases are instructive here, they are still distinguishable. Unlike *Gonzalez*, the trial court here did not expressly couch its analysis in terms of Barton's *current* dangerousness. In fact, the court did not specifically find Barton to be a danger to public safety. A propensity to reoffend could give rise to an inference of "dangerousness," but the court did not use that language. Nor did the court state Barton's propensity to reoffend might lessen over time. The court concluded despite all Barton's efforts and his change of heart, it was still likely he could reoffend–even at the age of 71 or later, and even in his poor state of health based on his prior history.

Even if the trial court's analysis could be interpreted as a consideration of Barton's dangerousness, and even if it could be found that the court considered his dangerousness only at the time of resentencing and not in perpetuity, we find that it did not abuse its discretion in declining a further sentence reduction. The court did not apply the wrong standard, based on the timing of Barton's potential release.

Before resentencing, Barton was eligible for parole beginning in February of 2033, approximately eight years after the resentencing hearing, and that eligibility will likely be sooner since his sentence has been reduced by five years. The difference in the analysis of Barton's dangerousness

10

between 2025 (the date of resentencing) and his new parole date based on his reduced sentence is not likely to be significant, even considering Barton's age and current health condition. Moreover, Barton requested his sentence be reduced to seven years to life, though he had already served more than 14 years at the time of his request. If that sentence were imposed, Barton would likely be immediately eligible for parole. At the very least, he would likely be released "within a short time frame." (*Gonzalez, supra,* 103 Cal.App.5th at p. 228.) Thus, under *Gonzalez*, the court would be permitted to consider his current level of dangerousness. It is disingenuous for Barton to request a reduction in sentence which would result in his near-immediate release and then claim the court's analysis was flawed because it was not "forward-looking" enough.

The trial court reached a conclusion Barton finds unsatisfactory, but that does not mean the court did not understand the standard of dangerousness inquiry or its level of discretion. Indeed, the court appears to have used its discretion under section 1172.75, subdivision (d)(3), to evaluate factors which might justify a reduced sentence. Declining to further reduce the sentence was the result of that evaluation, not evidence of a lack thereof.[2]

---

[2] Because we do not find any error in the trial court's actions, we need not address the Attorney General's arguments that any error is harmless.

## DISPOSITION

The postjudgment order resentencing Barton to 35 years to life is affirmed.



BANCROFT, J.*

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.