Filed 6/23/26  P. v. Moreno CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084716 |
| v. | (Super.Ct.No. FSB053258) |
| DANIEL JESUS MORENO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Christopher Beesley and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

1

At a resentencing hearing pursuant to Penal Code section 1172.75,[1] the court declined to strike defendant and appellant Daniel Jesus Moreno's prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and personal use of a deadly weapon enhancement (§ 12022, subd. (b)(1)) (use enhancement). On appeal, defendant contends the court erred in declining to strike his prior strike conviction and use enhancement. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 25, 2005, defendant and the victim argued in the hallway of a sober living home. The victim told defendant she was going to "handle [her] business"; she pushed defendant in the chest with her hands. Defendant then stabbed her multiple times, killing her. (*People v. Moreno* (2011) 192 Cal.App.4th 692, 697 (*Moreno*).)

A resident of the home was awakened by the argument. He heard a woman scream, "help me." The resident opened his door and saw the victim collapse onto the floor with blood squirting from her neck or shoulder. Defendant was behind the victim; defendant ran away yelling, "Fuck you bitch. That's what you get. That's what people like you deserve." Defendant took the victim's truck and drove away. (*Moreno*, *supra*, 192 Cal.App.4th at p. 697, fn. omitted.)

Two days later, police observed the victim's truck at an apartment. They searched the apartment and found defendant lying on a bed therein. In defendant's duffle bag, they found "a narcotics pipe with methamphetamine residue, a knife with dried blood on its

---

[1] All further statutory references are to the Penal Code.

blade, and a black . . . windbreaker saturated with blood." DNA testing reflected the blood on the knife, windbreaker, and defendant's shoes to be that of the victim. (*Moreno*, *supra*, 192 Cal.App.4th at pp. 697-698.)

On June 11, 2009, a jury convicted defendant of first degree murder. (§ 187, subd. (a), count 1.) The jury also found the use enhancement true. The court thereafter found true allegations that defendant had suffered a prior strike conviction, a prior violent felony conviction (§ 667.5, subd. (a)), and two prior prison terms (§ 667.5, subd. (b)).[2] After denying defendant's *Romero* motion,[3] the court sentenced defendant to an aggregate term of 50 years to life, plus one year; the court stayed imposition of sentence on both defendant's prior prison terms and the prior violent felony conviction. (*Moreno*, *supra*, 192 Cal.App.4th at p. 696.)

On November 29, 2023, at a hearing pursuant to section 1172.75, the court struck both prior prison term enhancements and continued the matter for a full resentencing hearing.

---

[2] The prior strike conviction and prior violent felony conviction allegations were based on defendant's conviction for assault with a deadly weapon with force likely to produce great bodily injury (§ 4501) on July 28, 2003. One of the prior prison term allegations was based on defendant's conviction for driving in willful disregard for the safety of others while fleeing police on March 1, 2000. The underlying conviction for the remaining prior prison term allegation is not reflected in the record. Presumably, it also derived from defendant's conviction for assault with a deadly weapon with force likely to produce great bodily injury.

[3] *People v. Superior Court* (*Romero*) 13 Cal.4th 497 (*Romero*).

On September 9, 2024, defendant filed a resentencing brief. Defendant requested the court strike the prior strike conviction pursuant to *Romero* and strike the use enhancement in consideration of defendant's postconviction efforts at rehabilitation.[4]

The People filed a memorandum of points and authorities arguing that because defendant remained a danger to the community, the court should deny defendant's request for resentencing. The People attached to their memorandum documentation regarding several negative behavioral incidents defendant had been involved in while incarcerated between December 7, 2015, and April 8, 2023, including a stabbing, a separate battery on an inmate with a weapon, and two separate incidents of possession of a weapon.

At the hearing on September 18, 2024, the People argued that the only realistic concern for the court was whether to strike the use enhancement. The People noted defendant "had a very recent strike when he committed the murder.[5] He's certainly not a good Romero candidate based on those facts."

---

**4** The brief notes, "Defendant's record of rehabilitation outlines the activities, programs[,] and work assignments undertaken during his incarceration. [¶] Defendant has a learning disability and has worked toward his GED while in custody." The brief then reads several times that "*If* an Exhibit . . . is attached hereto," (italics added) it reflects upon several supposed rehabilitation efforts defendant undertook while incarcerated. However, no exhibits are attached.

**5** As noted *ante*, defendant was convicted of the underlying prior strike conviction offense of assault with a deadly weapon with force likely to produce great bodily injury on July 28, 2003. The People alleged the murder in the instant case occurred on or about November 25, 2005.

The People further argued, "normally, I wouldn't mind striking the one-year enhancement, except for this case, the defendant . . . in April 2023, he stabbed a fellow inmate using a makeshift weapon . . . . Did some pretty good damage to cut him up pretty badly. So I still think he remains [a] danger to the community. And, I think, based on that fact . . . he doesn't necessarily meet [section] 1385[, subdivision ](c) consideration because of that danger to the community aspect."

Defense counsel argued that based on defendant's unspecified "achievements," the court should exercise its discretion to strike the prior strike conviction and use enhancement.

The court noted that it had discretion to strike the prior strike conviction and the use enhancement. The court observed that defendant had "participate[d] in and complete[d] several programs, which is beneficial."[6] On the other hand, the court noted defendant's prior record and performance in prison, including the stabbing.

The court observed, with respect to striking the use enhancement, "I mean with a sentence of 50 years to life, he's not going to be getting out within a timeframe where he would be a danger to the outside community." "So on balance, while there's not a danger to the community outside of prison because he's going to be in prison for 50 to life, but

---

[6] It is unclear from the record to what programs the court was referring.

the one-year enhancement . . . does effect things like what facility he's in, what level he's in."[7]

"I think that's an appropriate consideration for the issue of dangerousness within the prison system, both to fellow inmates as well as to prison personnel. And so for those reasons, the motion to strike the [section] 12022[, subdivision ](b)(1) allegation of use of the knife is denied." "Additionally, the use of the knife was, obviously, an integral part in the manner in which the homicide was committed. So, again, I think it's appropriate that the record reflect what actually occurred."

"So for all of those reasons, the consideration for any additional resentencing or full resentencing is denied. Defendant's sentence remains at 50 years to life as to Count 1, plus a one-year determinant term for the [section] 1[2]022[, subdivision ](b)(1) use of the knife allegation."

## II. DISCUSSION

Defendant contends the court erred in declining to strike the prior strike conviction and use enhancement. Defendant maintains the court was required to dismiss at least one of the "enhancements," including the prior strike conviction, because the resultant sentence is over 20 years, and there were multiple "enhancements." Defendant further argues that even if the court was not required to strike both "enhancements," it erred in declining to strike the use enhancement because it applied an incorrect legal standard by

---

[7] Defendant, born in July 1981, was 28 years old when the court sentenced him and 43 years old on the date of the resentencing hearing. The sentencing court awarded defendant 1,365 days of credit.

determining that defendant's current risk of danger to prison inmates and staff was within the ambit of "public safety."[8] We disagree.

A. General Law

"[T]he trial court ha[s] the authority to exercise its discretion under section 1385[, subdivision ](a) and *Romero* to strike any or all of [defendant's] strike priors after recalling his sentence and for the purpose of resentencing him under section 1172.75." (*People v. Rogers* (2025) 108 Cal.App.5th 340, 364.) We review a court's sentencing decisions in a section 1172.75 resentencing proceeding for abuse of discretion. (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856-857 [appellate court reviews court's finding that dismissal of enhancement would endanger public safety for abuse of discretion].)

"[S]ection 1385, subdivision (c)(2), as added by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill No. 81); (Stats. 2021, ch. 721, § 1), provides that a sentencing court '[i]n exercising its discretion' to dismiss a sentencing enhancement 'shall consider and afford great weight to evidence offered by the defendant to prove' certain enumerated mitigating circumstances, and '[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1028 (*Walker*).) "[I]f the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the

---

[8] The People contend defendant forfeited this argument by failing to object to the court's reasoning.

7

sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Id.* at p. 1029.)

"'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

"[A] trial court must 'engage[] in a holistic balancing with special emphasis on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor of . . . dismissal.'" (*Walker*, *supra*, 16 Cal.5th at p. 1036.) "But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]" (*Ibid.*) "[T]here must be substantial, relevant, and credible evidence of aggravating factors to neutralize the 'great weight' of the mitigating circumstances. [Citations.]" (*Ibid.*)

B. A Prior Strike Conviction is not an Enhancement

Defendant contends that a true finding on a prior strike conviction is an "enhancement" for section 1385 purposes. However, "A prior strike conviction is not an

8

enhancement but part of an alternative sentencing scheme. Accordingly, section 1385, subdivision (c) does not apply to prior strike convictions. [Citation.]" (*People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2; see *People v. Burke* (2023) 89 Cal.App.5th 237, 243-244; *People v. Olay* (2023) 98 Cal.App.5th 60, 67.) We agree with the unanimous determination of the appellate courts that have decided this issue. Thus, even if the court were required to dismiss all enhancements, the court would not have been required to dismiss defendant's prior strike conviction.[9]

C. Any Error in the Court's Focus on Current Versus Future Dangerousness was Harmless Because Section 1385, Subdivision (c)(2)(C) Does Not Here Apply

Defendant contends the court erred in declining to strike the use enhancement because it applied the wrong legal standard. Specifically, defendant maintains the court was required to base its decision on defendant's future risk to the public upon his release, not on his present risk to prison inmates and staff. The People argue defendant forfeited this issue by not objecting to the court's reasoning below. We conclude that any error was harmless because section 1385, subdivision (c)(2)(C) does not here apply.

1. Forfeiture

"As a general rule, 'a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to "prevent[]" or "correct[]" the claimed error in the trial court.' [Citation.]" (*Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 903

---

[9] Both because the court was not required to dismiss any enhancement because it rendered a danger to society finding, and because a prior strike conviction is not an enhancement, defendant's due process argument fails.

9

quoting *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) "The forfeiture doctrine is not absolute, however, as we are 'generally not prohibited from reaching a question that has not been preserved for review by a party.' [Citation.]" (*Conservatorship of C.O.*, at p. 903; see *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 227, fn. 9 (*Gonzalez*).)

We disagree that defendant forfeited the issue. First, defendant's brief argued that the court should focus on defendant's "Risk for Future Violence." Thus, defendant did raise the issue that the court should focus on defendant's future risk to the public upon his release if the court struck the use enhancement. (*Gonzalez*, *supra*, 103 Cal.App.5th 215 at pp. 225-226 [issue was not forfeited where the defendant raised it in his brief].) Second, "[e]ven were we to determine that forfeiture occurred, we . . . nevertheless exercise our discretion to consider" the issue. (*Id*. at p. 227, fn. 9.)

2. Dangerousness Determination

"Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly. [Citation.]" (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) "The plain words of the statute do not support the trial court's singular focus on whether the defendant currently poses a danger." (*Ibid*.)

"Determining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced. A defendant who would obtain immediate release if the petition is granted poses a different potential danger to society than a defendant who could be released only in his or her 70's. This applies with even greater force to a defendant who would still be serving a sentence greater than a human lifespan even if the petition were granted." (*People v. Williams* (2018) 19 Cal.App.5th 1057, 1063 [in a section 1170.126 context]; accord *Gonzalez*, *supra*, 103 Cal.App.5th at p. 230 ["court erred because it considered only whether [defendant] *currently* posed a danger to the public when assessing if a dismissal of the . . . enhancement would 'endanger public safety'"].)

Here, like in *Gonzalez*, the court appears to have focused its public safety analysis primarily, if not solely, on defendant's current risk of danger: "I think that's an appropriate consideration for the issue of dangerousness within the prison system, both to fellow inmates as well as to prison personnel."

The court appears to have either declined consideration of defendant's future dangerousness or to have even expressly found that defendant posed no future risk of harm to the public if the court struck the use enhancement: "with a sentence of 50 years to life, he's not going to be getting out within a timeframe where he would be a danger to

11

the outside community."  "So on balance, . . . there's not a danger to the community outside of prison because he's going to be in prison for 50 to life . . . ."

3.  Prejudice

Any error in the court's analysis was harmless.

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'  [Citation.]  In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'  [Citations.]"  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

However, "subdivision (c)(2)(C) of section 1385 provides in relevant part, 'The application of an enhancement could result in a sentence of over 20 years.'  A sentence exceeding 20 years could result from an enhancement where a sentence of that length arises as a consequence of the enhancement.  [Citation.]  Thus, the effect of applying the enhancement itself leads to a sentence exceeding 20 years.  The word result denotes a causal relationship between the enhancement and a sentence exceeding 20 years.  Accordingly, this subdivision concerns 'enhancements increasing [a] sentence above 20 years.'  [Citation.]  In this instance, the sentence already exceeded 20 years without any

12

enhancement, so application of the [use] enhancement did not result in the effect addressed by this provision. We conclude from the plain language of section 1385, subdivision (c)(2)(C) that this provision does not apply where the enhancement itself does not 'result' in a sentence exceeding 20 years." (*People v. Torres* (2025) 113 Cal.App.5th 88, 93 [Declining to consider the defendant's argument that the "court considered only defendant's current dangerousness and not his future dangerousness after" determining that section 1385, subdivision (c)(2)(C) did not apply].)

Here, as in *Torres*, imposition of sentence on the use enhancement does not itself lead to a sentence exceeding 20 years. Defendant's sentence without the use enhancement already exceeds 20 years; in other words, even without imposition of sentence on the use enhancement, defendant would still be facing a sentence of 50 years to life. Striking the enhancement would still result in a sentence exceeding 20 years. Thus, as in *Torres*, section 1385, subdivision (c)(2)(C) does not apply. Therefore, any error in the court's consideration of current versus future endangerment to public safety is harmless because section 1385, subdivision (c)(2)(C) does not apply.

## III.  DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.

14